**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Joint Stock Company State Savings Bank of Ukraine (a/k/a JSC Oschadbank),<br><br>    *Petitioner*,<br><br> v.<br><br>The Russian Federation,<br><br>    *Respondent*. | CIVIL ACTION<br><br> NO. 1:23-cv-00764 (ACR) |

**RESPONDENT RUSSIAN FEDERATION'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO STAY**

Bruce S. Marks (Bar I.D. C0034)
Thomas Sullivan (Bar I.D. PA0122)
Maria Grechishkina (Bar I.D. PA0199)
Marks & Sokolov, LLC
1835 Market St., 17th floor
Philadelphia, PA 19103
Tel: (215) 569-8901
marks@mslegal.com
tsullivan@mslegal.com
mgrechishkina@mslegal.com


*Counsel for Respondent,
The Russian Federation*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 3

I.    THE FRENCH PROCEEDINGS ............................................................................ 3

    A.    The Arbitration......................................................................................... 3

    B.    The French Revision Action ..................................................................... 4

        1.    The Tribunal's Revision Decision ................................................. 4

        2.    The 2026 COA Revision Decision ................................................. 5

        3.    Reconstituting the Tribunal and Reinstating the Revision Application............... 6

    C.    The French Set-Aside Action..................................................................... 6

        1.    The 2021 Set-Aside Decision ........................................................ 6

        2.    The Court of Cassation's Reversal and Remand ........................... 6

        3.    The COA Proceeding On Remand and the 2025 COA Set-Aside Decision......... 7

        4.    The 2026 Cassation Court Appeal ................................................. 7

II.   THE DISTRICT COURT PROCEEDINGS............................................................ 8

ARGUMENT..................................................................................................................... 8

I.    THE COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO STAY THIS MATTER BASED ON TRADITIONAL STANDARDS ......................................... 10

    A.    Judicial Economy Supports Granting a Stay ............................................. 11

    B.    The Balance of Harms Favors a Stay......................................................... 14

II.   THE *EUROPCAR* FACTORS FAVOR A STAY .................................................. 15

    A.    The General Objectives of Investor-State Arbitration Favor A Stay........................ 16

    B.    The Status of the French Proceedings Favors A Stay................................. 18

    C.    The Award Will Receive Equal or Greater Scrutiny In France .................. 18

    D.    Characteristics of the French Proceedings Favor a Stay Because The French Proceedings Were Commenced in 2019 and Should be Permitted To Conclude....... 19

    E.    The Balance of Hardships Favors a Stay Because the RF Will Be Harmed and Oschadbank Will Suffer No Harm................................................ 19

    F.    All Other Circumstances Favor A Stay ..................................................... 20

CONCLUSION.................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
  143 F.4th 496 (D.C. Cir. 2025) ................................................................13

*Antietam Indus., Inc. v. Morgan Keegan & Co.*,
  2012 U.S. Dist. LEXIS 142425 (M.D. Fla. Oct. 2, 2012) ..........................................10

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
  668 F.3d 724 (D.C. Cir. 2012) ................................................................11

*CC/Devas (Mauritius) Ltd. v. Republic of India*,
  2022 U.S. Dist. LEXIS 53416 (D.D.C. March 24, 2022) ................................... *passim*

*CEF Energia, B.V. v. Italian Republic*,
  2020 U.S. Dist. LEXIS 130291 (D.D.C. July 23, 2020) ......................................9, 11

*CPConstruction Pioneers Baugesellschaft Anstalt v. Gov't of the Republic of Ghana*,
  578 F.Supp.2d 50 (D.D.C. 2008) ................................................................11

*Cube Infrastructure Fund Sicav v. Kingdom of Spain*,
  2021 U.S. Dist. LEXIS 256207 (D.D.C. May 17, 2021) ..........................................18

*de Csepel v. Republic of Hungary*,
  165 F.4th 572 (D.C. Cir. 2026) ................................................................12

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................17

*Dietz v. Bouldin*,
  579 U.S. 40 (2016) ................................................................10

*Europcar Italia, S.P.A. v. Maiellano Tours*,
  156 F.3d 310 (2d Cir. 1998) ................................................................ *passim*

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990) ................................................................14

*Getma Int'l v. Republic of Guinea*,
  142 F.Supp.3d 110 (D.D.C. 2015) ("*Getma I*") ................................ 14-15, 17, 18, 19

*Getma Int'l v. Republic of Guinea*,
  191 F.Supp.3d 43 (D.D.C. 2016) ................................................................ 11-12

*In re EquiMed, Inc.*,
  2005 U.S. Dist. LEXIS 25904 (E.D. Pa. Oct. 28, 2005) ..........................................10

*Intel Corp. v. Adv. Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................10

*Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*,
   2005 U.S. Dist. LEXIS 34969 (W.D. Pa. Dec. 22, 2005) .......................................................18

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)...............................................................................................................11

*LLC SPC Stileks v. Republic of Moldova*,
   985 F.3d 871 (D.C. Cir. 2021) ...............................................................................................16

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
   397 F.Supp.3d 34 (D.D.C. 2019) ...........................................................9, 14, 15, 19

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) .......................................................................................................13, 14

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
   112 F.4th 1088 (D.C. Cir. 2024) ...........................................................................................12

*Novenergia II — Energy & Env't (SCA) v. Kingdom of Spain*,
   2020 U.S. Dist. LEXIS 12794 (D.D.C. Jan. 27, 2020) ......................................................9, 15

*Qatar Nat'l Bank v. Perles Law Firm, P.C.*,
   2025 U.S. App. LEXIS 27117 (D.C. Cir. Oct. 17, 2025) ......................................................10

*RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*,
   2021 U.S. Dist. LEXIS 63261 (D.D.C. Mar. 31, 2021) ...................................................13, 15

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
   487 F.3d 928 (D.C. Cir. 2007) .........................................................................................11, 12

*Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*,
   864 F.3d 172 (2d Cir. 2017) ..................................................................................................13

**Statutes**

8 U.S.C. §1782 .......................................................................................................................10

9 U.S.C. §207 .................................................................................................................1, 8, 15

28 U.S.C. §1605.................................................................................................................1, 13

**Treaties**

U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
21 U.S.T. 2517, 330 U.N.T.S. 38 (June 10, 1958)
("New York Convention")............................................................................ 11, 15, 16, 17

Agreement between the Cabinet of Ministers of Ukraine and the Government of the
Russian Federation on the Encouragement and Reciprocal Protection of Investments
(November 27, 1998) ("BIT") ............................. .......................................................*passim*

**International Authorities**

French Code of Civil Procedure (December 5, 1975) ("FCCP") ....................................................6

*Oschadbank v. The Russian Federation*, Court of Cassation, Appeal No. 21-15.390, Judgment (December 7, 2022) ("2022 Cassation Court Judgment") ..................................... 5, 6-7

*The Russian Federation v. Joint Stock Company "State Savings Bank of Ukraine" (aka JSC Oschadbank)*, Paris Court of Appeal, No. RG 19/04161, Judgment (Mar. 30, 2021) ("2021 COA Set-Aside Decision") ................................................................................6

*The Russian Federation v. Joint Stock Company "State Savings Bank of Ukraine" (aka JSC Oschadbank)*, Paris Court of Appeal, No. RG 24/05331, Judgment (June 23, 2026) ("2026 COA Revision Decision") .................................................................1, 2, 5, 9, 12

*The Russian Federation v. Joint Stock Company "State Savings Bank of Ukraine" (aka JSC Oschadbank)*, Paris Court of Appeal, No. RG 24/16339, Judgment (June 23, 2026) ("2026 COA Revision Costs Decision")....................................................................................6

*The Russian Federation v. NJSC Naftogaz of Ukraine*, Court of Appeal at The Hague, Civil Law Div., No. 200.274.564/01, Judgment (July 19, 2022)......................................................7

*The Russian Federation v. NJSC Naftogaz of Ukraine et al.*, Supreme Court of the Netherlands, No. 22/03902, Judgment (December 6, 2024)............................................................7

*Republic of Ecuador v. United States of America*, UNCITRAL, PCA Case No 2012-5, Award (September 29, 2012) ................................................................................ 16-17

**Other**

Columbia Center on Sustainable Investment, *Primer On Int'l Investment Treaties and Investor-State Dispute Settlement* (December 2021).....................................................................17

Matthew Hodgson, Yarik Kryvoi and Daniel Hrcka, *2021 Empirical Study: Costs, Damages and Duration in Investor-State Arbitration* (British Inst. of Int'l & Comp. L. & Allen & Overy 2021) ..........................................................................................................16

## PRELIMINARY STATEMENT[1]

The Russian Federation ("RF") moves to stay this action pending the French Proceedings (defined herein) to revise or set aside the $1.1 billion arbitral award dated November 26, 2018 ("Award") (ECF 1-2), which Petitioner JSC Oschadbank ("Oschadbank") waited four years, three months, and twenty-three days after it was issued to confirm in the U.S. by filing its present Petition in this Court (ECF 1) – well outside the three-year period for seeking confirmation of a foreign award under 9 U.S.C. §207. Courts routinely grant stays in the FSIA §1605(a)(6) context pending set-aside proceedings under their inherent authority based on traditional standards, with some considering the *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310 (2d Cir. 1998) factors.

At the September 18, 2024 hearing on the RF's motion to stay (ECF 34), which resulted in the first stay, this Court "bet" that it would continue the stay if the Paris Court of Appeal ("COA") granted the RF's set-aside application in France on remand from the Cassation Court but discontinue the stay if the application was denied.[2] While the application was denied, *see* July 1, 2025 COA Decision ("2025 COA Set-Aside Decision") (ECF 73), resulting in the first stay being lifted, two *significant* recent developments calling into question the validity of the Award now strongly counsel a further stay pending resolution of the French Proceedings.

**Revision Proceeding:** On June 23, 2026, the COA issued a decision ("2026 COA Revision Decision") annulling the December 11, 2023 Tribunal's dismissal of the RF's 2019 *Révision* application to set aside the Award, claiming Oschadbank concealing that its investments were

---

[1] Unless otherwise stated, all emphases are added, and all citations, quotation marks, footnotes, ellipses, and brackets omitted. Exhibits are attached to Maria Grechishkina Declaration as "**Ex.**" and Second Andrea Pinna Declaration as "**Ex. AP.**"

[2] *See* 9/18/2024 Hearing Transcript, Part 2, 5:18-25, 6:1-9, **Ex. F** ("I'm not going to stop anyone from coming back and trying to change my mind, but I can tell you that that's likely what's going to happen. If I was going to bet, that's what I would bet would happen.").

made before January 1, 1992, not after, as required by BIT Article 12, with newly discovered evidence conclusively proving this ("Revision Action"). The COA found that actions of arbitrator Charles N. Brower, appointed by Oschadbank, "cannot fail to raise doubts … as to [Brower's] impartiality and thus calls into question the validity of the composition of the arbitral tribunal." 2026 COA Revision Decision, ¶¶49-50, **Ex. AP-7.** The renewed Revision Action before an arbitration tribunal will challenge the validity of the Award based on Oschadbank concealing its investment was made before January 1, 1992 and new documents conclusively establishing this. If successful, the tribunal will revoke the Award and issue a new one.

**Cassation Proceeding:** On July 1, 2026, the RF filed its appellate brief before the French Cassation Court, appealing the 2025 COA Set-Aside Decision ("2026 Cassation Court Appeal"), **Ex. AP-6.** On July 7, in response to the RF's request, ***Oschadbank agreed to stay enforcement proceedings on the Award in the UK pending resolution of the 2026 Cassation Court Appeal.*** *See* Goldberg Affidavit, **Ex. A;** July 8, 2026 Quinn Emanuel Letter, **Ex. B;** July 13, 2026 Consent Order, **Ex. C.** The 2026 Cassation Court Appeal may result in vacating the Award, particularly given that the 2026 COA Revision Decision raises the distinct possibility that Brower tainted the entire arbitration. If the Cassation Court proceedings support a stay in the UK—to which Oschadbank agreed—they equally support a stay here.

***First,*** the foregoing developments warrant a stay under the traditional standards. Judicial economy will be served, since this Court will not have to expend further resources if the Revision Proceeding and the Cassation Proceeding ("French Proceedings") revise or set aside the Award, rendering this proceeding moot. The balance of harms likewise favors a stay because the RF is a foreign sovereign entitled to protection from unnecessary burden of litigation under FSIA and should not have to litigate the Award in two separate jurisdictions and three separation

proceedings, while Oschadbank suffers no harm pending the French Proceedings' conclusion. Further, if the Award is prematurely enforced, but later revised or set aside in France, the RF will be burdened by having to reverse enforcement and recover assets that may have been seized.

***Second,*** alternatively, a stay is warranted under the *Europcar* factors based on judicial economy, the balance of harms, and the difficulties which may arise if the Award is recognized here, but later revised or set aside in France, as described above. And, comity is best served by allowing the courts in France, Oschadbank's selected jurisdiction, to conclude revision and set-aside proceedings, which are integral to the investor-state dispute-resolution process.

***In sum,*** this action, which was not filed until March 2023, should be stayed pending completion of potentially dispositive French Proceedings filed in 2019, three and a half years before. The Court may wish to first hear argument on the Motion to Stay before that on the Consolidated Motion to Dismiss ("CMTD") at the August 17, 2026 hearing, as it did at the September 18, 2024 hearing, which resulted in the original stay.

## BACKGROUND

**I.      THE FRENCH PROCEEDINGS**

### A.      The Arbitration

On January 20, 2016, Oschadbank initiated arbitration against the RF based upon the 1998 Russia-Ukraine Bilateral Investment Treaty ("BIT") (ECF 1-3), alleging expropriation of its purported investments in Crimea in 2014, by serving a Notice of Arbitration dated January 18, 2016 (ECF 101-19). *See* Award, ¶10 (ECF 1-2). By its terms, the BIT applies only to investments made by an investor of one state in the territory of the other, Art. 1(1), "starting from" January 1, 1992, Art. 12. The RF did not respond to Oschadbank's Notice, having informed Oschadbank that it had not offered to arbitrate claims by Ukrainian investors in Crimea before its accession to the RF in March 2014, by letter dated December 24, 2015 (ECF 101-18).

Oschadbank picked Charles N. Brower, a U.S. national, as its party-appointed arbitrator. Notice of Arbitration, ¶34 (ECF 101-19). Oschadbank represented that Brower had confirmed to its counsel "that he is and shall remain impartial and independent of the parties during the pendency of the arbitration." *Id.*, ¶35. With the RF not participating, the Secretary-General of the Permanent Court of Arbitration ("PCA") designated an Appointing Authority, appointed Hugo Perezcano Díaz as a second arbitrator. Brower and Díaz then selected Sir David A.R. Williams to serve as the Presiding Arbitrator of the Tribunal. *See* Award, ¶¶11-16 (ECF 1-2). On June 23, 2016, the RF notified the PCA that it did not consent to the constitution of the Tribunal or recognize its jurisdiction, and rejected Oschadbank's Notice. *Id.*, ¶¶18-21.

On August 19, 2016, following a teleconference between Oschadbank and the Tribunal and comments from Oschadbank, the Tribunal issued Procedural Order No. 1, setting the seat of arbitration as Paris, France. *Id.*, ¶¶17, 26, 27. On August 26, 2016, Oschadbank submitted its Statement of Claim (ECF 101-21). The arbitration proceeded without the RF. On November 26, 2018, the Tribunal issued the Award in favor of Oschadbank, based solely on BIT Art. 5 expropriation claims and awarding damages for *all* Oschadbank's Crimean Branch assets, necessarily including pre-January 1, 1992 investments.[3]

B.    **The French Revision Action**

1.    **The Tribunal's Revision Decision**

As set forth in the Revision Action Chronology, **Addendum A**, on August 19, 2019, the RF filed a "*Révision*" application to revoke the Award with the Tribunal. The RF argued two

---

[3] *See* Award, ¶¶324-326 (providing detailed statement of Oschadbank's claimed damages); ¶330 (summarizing Oschadbank's claimed damages as falling into three categories, including "(i) *loss of assets*, (ii) loss of future profits, and (iii) other heads of loss"); ¶¶374-375 (adopting Oschadbank's proposed value of lost assets, and other losses); ¶410 (awarding full amount of Oschadbank's claimed damages).

grounds: (1) fraud by Oschadbank by concealing that its alleged investment, the "Crimean Branch," was owned by it before January 1, 1992, by, *inter alia*, submitting its 2016 bylaws, instead of the original 1991 bylaws, to hide the Crimean Branch's pre-1992 existence from the Tribunal; and (2) newly discovered documents conclusively showing the Crimean Branch's pre-1992 existence.[4]  *See* Second Pinna Dec. ¶19, August 19, 2019 Revision Application, **Ex. AP-9**. On December 23, 2019, the Tribunal decided on its own motion to stay the Revision Action pending resolution of the Set-Aside Action.  At Oschadbank's request, the Tribunal dismissed the Revision Action on December 11, 2023, based on the 2022 Cassation Court Judgment, *infra*.  *See* Second Pinna Dec. ¶20, Revision Decision, **Ex. AP-4**.

### 2.    The 2026 COA Revision Decision

On March 8, 2024, the RF "seized" the COA to set aside the Revision Decision, ("Revision Set-Aside Action").  *See* Second Pinna Dec. ¶21, March 25, 2024 "*Déclaration De Saisine",* **Ex. AP-5**.  The RF argued, *inter alia*, that arbitrator Brower lacked independence and impartiality based on his Amicus submission **against** the RF in *Hulley Enterprises, Ltd. v. Russian Federation,* Case No. 23-7174 (D.C. Cir. May 8, 2024), Doc No. #2053461.  *Id*. ¶22.  On June 23, 2026, the COA annulled the Revision Decision, finding Brower's actions "cannot fail to raise doubts … as to [his] impartiality and thus calls into question the validity of the composition of the arbitral tribunal," and awarding the RF €150,000 in costs.  *Id*., 23-24, 2026 COA Revision Decision, **Ex.**

---

[4] In addition to Oschadbank's original 1991 bylaws, the newly discovered documents establishing that the Crimean Branch became Oschadbank's asset before January 1, 1992, included: Minutes of September 3, 1991 Oschadbank board meeting identifying the Crimean Branch director as a board member and appointing her to the Executive Committee; Oschadbank board regulation dated September 3, 1991, referencing the Crimean Branch director; internal memorandum dated September 20, 2013, detailing Oschadbank's evolution since 1977 as a subdivision of the USSR's Sberbank; and Soviet statistics from January 1, 1971, showing 733,672 savings accounts at the Crimean Branch while part of the USSR's Sberbank.  *See* Second Pinna Dec. ¶19, August 19, 2019 Revision Application, **Ex. AP-9**.

**AP-7**, ¶¶49-51.  In a separate ruling, the COA annulled the Tribunal's June 19, 2024 costs award and awarded the RF an additional €50,000.  *Id*., ¶25, 2026 COA Costs Set-Aside Decision, **Ex. AP-8**, ¶¶26-27.

### 3.  Reconstituting the Tribunal and Reinstating the Revision Application

On July 19, 2026, the RF reinstated the Revision Application for a reconstituted tribunal in which Brower will be replaced.  *See* Second Pinna Dec. ¶26; **Ex. AP-10**. At this point, Brower's clear bias has already delayed the Revision Action for no fault of the RF.  Following the 2022 Cassation Court Judgment, *infra*, the Tribunal lifted its *sua sponte* stay and took until December 11, 2023 to issue its Revision Decision.  It is reasonable to believe that the new tribunal will take approximately the same amount of time to decide the renewed Revision Action.

### C.  The French Set-Aside Action

### 1.  The 2021 Set-Aside Decision

On February 19, 2019, the RF commenced proceedings before the COA to set-aside the Award ("Set-Aside Action") pursuant to the French Code of Civil Procedure ("FCCP").  *See* Second Pinna Dec. ¶5, February 28, 2019 "*Déclaration De Saisine*", **Ex. AP-1**.  The RF asserted several grounds for set aside, including that the BIT does not apply to investments made before January 1, 1992 (*ratione temporis* jurisdiction).  *Id*., ¶6; RF's February 4, 2021 submission, **Ex. AP-2**.  On March 30, 2021, the COA set aside the Award, holding the Tribunal lacked jurisdiction to hear a dispute over investments made prior to January 1, 1992 under BIT Article 12.  *Id*., ¶7; 2021 COA Set Aside Decision, ECF 1-4, ¶101.  The COA did not examine the other grounds for annulment put forward by the RF.

### 2.  The Court of Cassation's Reversal and Remand

On April 19, 2021, Oschadbank commenced an appeal to the French Court of Cassation. On December 7, 2022, the Cassation Court reversed the 2021 COA Set Aside Decision, holding,

*inter alia*, that BIT Art. 12's temporal limitation of January 1, 1992, was not related to jurisdiction, but to the merits, and was outside the scope of review by the French set-aside court. *See JSC Oschadbank v. The Russian Federation*, Court of Cassation, Appeal No. 21-15.390, Judgment of December 7, 2022, ¶13 ("2022 Cassation Court Judgment") (ECF 1-5); Second Pinna Dec. ¶9.[5] The case was remanded to a differently constituted panel of the COA.

### 3.    The COA Proceeding On Remand and the 2025 COA Set-Aside Decision

On March 8, 2024, the RF "seized" the COA to renew the Set-Aside Action. *See* Second Pinna Dec. ¶10, March 25, 2024 "*Déclaration De Saisine*", **Ex. AP-3**.  The COA was tasked to decide on all set-aside grounds put forward by the RF.  On July 1, 2025, the COA dismissed the Set-Aside Action. *See* 2025 COA Set-Aside Decision (ECF 73); Second Pinna Dec. ¶11.

### 4.    The 2026 Cassation Court Appeal

On July 1, 2026, the RF filed its appellate brief with the Cassation Court in its appeal of the 2025 COA Set-Aside Decision ("2026 Cassation Court Appeal"). *See* Second Pinna Dec. ¶13, 2026 Cassation Court Appellate Brief, **Ex. AP-6**.  The RF argues the COA erred in rejecting its challenges to the Award, including those based on Oschadbank committing fraud by concealing from the arbitrators that the investment was made before January 1, 1992, and the Tribunal being irregularly constituted due to arbitrator Brower's lack of independence and impartiality. *Id.*, ¶14. Oschadbank's response is due November 2, 2026. *Id*.  As stated in the Goldberg Affidavit, at ¶74, the appeal is expected to take approximately 14 months.

---

[5] In contrast, the Dutch courts held Article 12 was jurisdictional in another case. *See* Nouvel Dec. ¶45 (ECF 103), citing *The Russian Federation v. NJSC Naftogaz of Ukraine*, Court of Appeal at The Hague, Civil Law Div., No. 200.274.564/01, Judgment (July 19, 2022), ¶5.7.6 (ECF 103-33); *The Russian Federation v. NJSC Naftogaz of Ukraine et al.*, Supreme Court of the Netherlands, No. 22/03902, Judgment (December 6, 2024), ¶4.4.2 (ECF 82-8).

## II.    THE DISTRICT COURT PROCEEDINGS

On March 21, 2023, Oschadbank filed its Petition to confirm the Award (ECF 1)—four years, three months, and twenty-three days after the it  was rendered—outside the three-year period for seeking confirmation of a foreign award under 9 U.S.C. §207.  *Id*., ¶¶40, 68-70.

The RF moved to dismiss (ECF 37), and separately moved to stay proceedings pending the COA decision on remand (ECF 34).  After a hearing on September 18, 2024, the Court stayed the case by agreement.  *See* Sept. 18, 2024 Minute Order; 9/18/2024 Hearing Transcript, Part 1 (ECF 101-27); 9/18/2024 Hearing Transcript, Part 2 **Ex. F**.  The stay remained in effect until the COA issued its decision on remand on July 1, 2025.  Thereafter, the RF filed a Supplemental Motion to Dismiss (ECF 75).  On December 5, 2025, the Court held a hearing on both motions to dismiss and took them under advisement.  *See* Dec. 5, 2025 Minute Order; 12/5/2025 Hearing Transcript (ECF 101-28).

After further developments, including the Parties' Joint Report (ECF 94) and, as requested by the Court, the United States' statement on the issue preclusion of foreign judgments on FSIA jurisdictional issues (ECF 98), the Court directed the RF to file a consolidated motion to dismiss. *See* May 11, 2026 Minute Order.  The RF filed its CMTD on May 28, 2026 (ECF 100), and briefing is now complete, including briefing by both parties on the United States' statement, with a hearing scheduled for August 17, 2026.

## ARGUMENT

The RF moves to stay these proceedings pending resolution of the French Proceedings, which may revise or set aside the Award, mooting this case. *CC/Devas (Mauritius) Ltd. v. Republic of India*, 2022 U.S. Dist. LEXIS 53416 (D.D.C. March 24, 2022), which granted a stay pending conclusion of Dutch set-aside proceedings, is illustrative of how courts grant stays involving the FSIA arbitration exception.  As in *CC/Devas*, the RF "claims that it has not waived its sovereign

immunity, which would divest this Court of jurisdiction over this dispute." *Id.,* *7.  In this exact circumstance, "courts in this district have held that staying a dispute about a foreign arbitral award is the 'type of threshold, non-merits, non-jurisdictional question' that a court may decide before addressing its own jurisdiction." *Id.,* *8 (collecting cases granting stays to foreign sovereigns).**[6]**

The 2026 COA Revision Decision is a game changer.  In vacating the Tribunal Revision Decision, the Paris COA found Brower was biased because he submitted an amicus brief ***against*** the RF in the D.C. Circuit in *Hulley, supra*.  The findings were harsh.  For example:

- Brower's "submission … constitutes a clear stance against [the RF]";

- Brower's language is "highly critical" of the RF;

- Brower's brief "condemns the Russian Federation's procedural conduct";

- Brower describes the RF's actions as "destructive" and "abusive";

- Brower "specifically criticize[s] the Russian Federation";

- "The fact that [Brower] should thus take a stance … in support of parties opposing one of the parties to the arbitration proceedings in another dispute, and should level sharp criticism at that party to the arbitration while the arbitration proceedings are still ongoing, cannot fail to raise doubts in that party's mind as to the arbitrator's impartiality and thus calls into question the validity of the constitution of the arbitration tribunal."

2026 COA Revision Decision, ¶¶42-50.

This Decision opens the door for a new arbitration tribunal, on remand, to fully explore Oschadbank's fraud in concealing its investments in Crimea were made before January 1, 1992,

---

[6] *See, e.g., CEF Energia, B.V. v. Italian Republic*, 2020 U.S. Dist. LEXIS 130291, *24 (D.D.C. July 23, 2020); *Novenergia II — Energy & Env't (SCA) v. Kingdom of Spain*, 2020 U.S. Dist. LEXIS 12794, *2 (D.D.C. Jan. 27, 2020); *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F.Supp.3d 34, 38-39 (D.D.C. 2019).

contrary to BIT Art. 12, which only provides protections for investments made "starting from" that date. The RF's proof is irrefutable—Oschadbank's own documents discovered after the Award establish Oschadbank's investment in Crimea pre-dated January 1, 1992.

There can be no doubt Oschadbank concealed the date on which its investments were made in Crimea, and the Tribunal impermissibly awarded damages for investments made before January 1, 1992. If so, the new tribunal should revoke the Award, and issue a new award addressing only investment (if any) made after January 1, 1992. In addition, the RF can seek discovery under 28 U.S.C. §1782[7] from Brower, who resides in Maryland, such as his communications related to the RF and Ukraine from the date of the dispute between the RF and Ukraine over Crimea, to establish the depth of his bias and its taint on the tribunal for use in French courts to set-aside the Award.[8] These circumstances compel a stay pending resolution of the French Proceedings.

## I.    THE COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO STAY THIS MATTER BASED ON TRADITIONAL STANDARDS

"A district court 'possesses inherent powers' stemming from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *CC/Devas,* at \*10 (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)). "The ability to stay

---

[7] 28 U.S.C. § 1782 empowers federal district courts to order discovery in the United States for use in foreign proceedings. The purpose of § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). *See*, *e.g.*, *Qatar Nat'l Bank v. Perles Law Firm, P.C.*, 2025 U.S. App. LEXIS 27117, at \*6-12 (D.C. Cir. Oct. 17, 2025) (affirming grant of § 1782 discovery for litigation use in France).

[8] Federal courts permit post-arbitration discovery from arbitrators based on credible allegations of arbitrator bias or lack of impartiality. *See*, *e.g.*, *Antietam Indus., Inc. v. Morgan Keegan & Co.*, 2012 U.S. Dist. LEXIS 142425, \*3-4, \*6-7 (M.D. Fla. Oct. 2, 2012) (allowing discovery from arbitral forum, where one of the arbitrators made misrepresentations and failed to disclose information suggesting that the arbitrator may have been biased); *In re EquiMed, Inc.*, 2005 U.S. Dist. LEXIS 25904, \*6 (E.D. Pa. Oct. 28, 2005) (allowing deposition of one of the arbitrators based on the arbitrator's failure to disclose prior relationships with defendant, its law firm, and its expert witness, which called the arbitrator's neutrality into question). Here, the COA already established Brower's bias.

10

litigation 'is incidental to' these inherent powers." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "A court exercising its power to stay a case must 'weigh competing interests and maintain an even balance,'… between the court's interests in judicial economy and any possible hardship to the parties." *Id.*, *11 (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 733-34 (D.C. Cir. 2012)). The Court should exercise its inherent authority and grant a stay based on these traditional standards.

### A.    Judicial Economy Supports Granting a Stay

A stay will promote judicial economy, because the French Proceedings may revise or set aside the Award, mooting this proceeding. "[F]ar from being at odds with the nature of arbitration confirmation proceedings, adjournments pending the completion of set-aside proceeding are an integral part of such proceedings." *CPConstruction Pioneers Baugesellschaft Anstalt v. Gov't of the Republic of Ghana*, 578 F.Supp.2d 50, 54 (D.D.C. 2008).

***First,*** a stay promotes judicial economy because if an "'arbitration award [is] lawfully nullified by the country in which the award was made,' a party has 'no cause of action in the United States to seek enforcement of the award under either the FAA or the New York Convention.'" *CC/Devas,* at *11 (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 930 (D.C. Cir. 2007)).[9]   The potential of the French Proceedings to render the Award unenforceable "is a paradigm example of a case warranting a stay where the legal viability of claims may rest on determinations in another legal proceeding." *Id. See*, *e.g.*, *TermoRio*, 487 F.3d at 934 (refusing to enforce arbitral award which had been set aside by Colombian court); *Getma Int'l v. Republic of Guinea*, 191 F.Supp.3d 43, 45, 55 (D.D.C. 2016) (staying enforcement proceedings pending

---

[9] *See also CEF Energia,* 2020 U.S. Dist. LEXIS 130291, *15 (granting stay; the interests of judicial economy are "especially strong where a [foreign] parallel proceeding is ongoing and when there is a possibility that the [arbitral] award will be set aside").

foreign set-aside proceedings, and, after set-aside, refusing to enforce annulled award), *aff'd*, 862 F.3d 45, 50 (D.C. Cir. 2017).  In addition, the 2026 COA Revision Decision raises serious doubts about the "the legal viability" of the Award based on the distinct possibility that arbitrator Brower's bias tainted the entire proceeding.  *CC/Devas*, at \*11; *TermoRio*, 487 F.3d at 930.

**Second,** a stay promotes judicial economy by avoiding "the difficulty of determining matters of foreign law currently being litigated in foreign courts." *CC/Devas,* \*12-13 (granting stay).  The CMTD and CMTD Reply raise numerous matters of international law under the BIT and complicated issues of U.S. and French law, including: (1) there was no agreement to arbitrate under the BIT because (a) Oschadbank repudiated the offer to arbitrate,[10] and (b) the RF did not offer to arbitrate disputes regarding investments made before January 1, 1992;[11] (2) there was no agreement to arbitrate armed-conflict taking under the law of international armed conflict;[12] and (3) the 2025 COA Set-Aside Decision is not issue preclusive on FSIA jurisdictional issues under U.S. and French law.[13]

---

[10] CMTD, 20-24, established that, under BIT Art. 9, the RF's offer to arbitrate was rejected by Oschadbank's "Notice of Arbitration" because it was a counteroffer.  Oschadbank's rejection of Russia's offer to arbitrate by a counteroffer goes to the existence of an agreement to arbitrate, which is jurisdictional.  CMTD, 24 (citing *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1101 (D.C. Cir. 2024)).

[11] CMTD, 24-27, established that, under BIT Art. 12, the RF did not offer to arbitrate disputes concerning investments made before January 1, 1992, and Oschadbank's "Crimea Branch" pre-dated January 1, 1992, since Oschadbank was created from the dismantling of the unified banking system of the USSR and the transfer of USSR's Sberbank's banking operations to Oschadbank— including the "Crimea Branch"—on September 3, 1991.

[12] CMTD, 27-41, established there was no agreement to arbitrate armed-conflict takings because claims for "expropriation" under BIT Art. 5, the sole basis for the Award, are superseded by the international law of armed conflict ("IAC"), as *lex specialis*, under which armed-conflict takings are not "expropriation." *See de Csepel v. Republic of Hungary*, 165 F.4th 572, 584 (D.C. Cir. 2026) (holding no expropriation during international armed conflicts).

[13] CMTD Reply, 21-25, established the 2025 COA Set-Aside Decision is not issue preclusive on FSIA jurisdiction for multiple reasons.  **First,** issue preclusion based on foreign judgments does

12

***Third,*** judicial economy is promoted because the Court will not have to decide potentially complicated FSIA jurisdictional issues unless the French Proceedings are unsuccessful. As discussed above, these include whether: (1) there was no agreement to arbitrate because (a) Oschadbank repudiated the offer to arbitrate, and/or (b) the RF did not offer to arbitrate disputes regarding investments made before January 1, 1992; (2) there was no agreement to arbitrate armed-conflict takings under the IAC; and (3) the tribunal's rulings are not preclusive on FSIA jurisdictional issues under U.S. and French law. In addition, Oschadbank is not a "private party", as §1605(a)(6) requires. *See* CMTD, 12-19, CMTD Reply, 5-7.

***Fourth,*** a stay conserves judicial resources, because "[i]f this Court were to affirm an award that [the parallel foreign proceeding] later annuls, '[m]ore expensive litigation involving more complex issues would result.'" *RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*, 2021 U.S. Dist. LEXIS 63261, *8 (D.D.C. Mar. 31, 2021). *See Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 178-79 (2d Cir. 2017) (district court required to vacate recognition judgment after award was set aside by foreign court).

***Fifth,*** anticipating Oschadbank's Response, any FAA policy favoring arbitration is not entitled to deference when deciding arbitration-related motions, including stays. *Morgan v. Sundance, Inc.,* 596 U.S. 411 (2022) unanimously held "the FAA's policy favoring arbitration does not authorize federal courts to invent special arbitration-preferring procedural rules." *Id.*,

---

not apply to §1605(a)(6) jurisdictional issues generally, including, *inter alia*, because a foreign judgment is not entitled to issue-preclusive effect unless recognized, and recognizing a foreign judgment based on an arbitration award against a foreign sovereign is not permitted by FSIA, as established by *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 143 F.4th 496, 502 (D.C. Cir. 2025), *cert. denied*, 224 L.Ed.2d 525 (Apr. 27, 2026). ***Second,*** issue preclusion does not apply to the 2025 COA Set-Aside Decision specifically, including, *inter alia*, because French law does not recognize issue preclusion of decisions denying set-aside applications, and the issues are different in any event.

13

418.  It explained that the FAA's general objective of expeditious resolution of disputes and avoidance of protracted and expensive litigation "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts … [and to make] arbitration agreements as enforceable as other contracts, but not more so." *Id.*  Put another way, "[i]f an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." *Id.*  And, *Morgan* specifically held, "***an application to stay litigation*** or compel arbitration … shall be made and heard ***in the manner provided by law for the making and hearing of motions.***" *Id.*, 419 *(*quoting FAA, §6).

**In sum,** judicial economy strongly supports granting a stay.

## B.        The Balance of Harms Favors a Stay

The hardship on the RF greatly outweighs any potential hardship to Oschadbank.

***First,*** "sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits."  *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990).  Absent a stay, the RF will "undeniably be burdened by having to attack the validity of [an] arbitral award in two forums" simultaneously, with two separate proceedings in France.  *See CC/Devas*, at *12 ("[T]he hardship to India to litigate those matters simultaneously suggest that the Court should exercise its inherent power to stay."); *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 40 (D.D.C. 2019) (granting stay because Spain "will undeniably be burdened by having to attack the validity of the arbitral award in two forums").

***Second,*** there is "very real harm" if a foreign state's assets are seized pursuant to enforcement of an arbitral award and the primary jurisdiction's courts later "determine[s] that the award was improper." *Getma Int'l v. Republic of Guinea*, 142 F.Supp.3d 110, 118 (D.D.C. 2015)

14

("*Getma I*").  Here, the RF "would 'undeniably be burdened' … if the [French] courts later set the awards aside, [if it would then] 'hav[e] to recover assets seized' as a result of this Court's confirmation." *CC/Devas*, at \*12.  *See also RREEF Infrastructure*, at \*8 ("[I]f the Court were to confirm the award now, Spain could face the arduous task of trying to recover seized assets if its annulment application before the ICSID proves successful."); *Novenergia II*, at \*10 ("[T]he risk of premature enforcement could result in [a foreign State] trying to recover assets seized during this action if it were to prevail in the [set aside] proceedings."); *Masdar Solar*, 397 F.Supp.3d at 40 (emphasizing the burden to a foreign State of "having to recover assets seized during this action should the annulment proceeding go its way").

**Third,** Oschadbank can assert no cognizable harm. Its agreement to stay enforcement proceedings on the Award in the UK pending resolution of the 2026 Cassation Court Appeal (**Exs. C, D**) demonstrates the lack of harm to Oschadbank in staying the present action.  The French Proceedings are likely to conclude within a reasonable period of time. Oschadbank can hardly complain about the time which revision and set-aside proceedings take in its chosen French jurisdiction. Moreover, Oschadbank has admittedly filed this proceeding outside the jurisdictional three-year period to recognize awards under 9 U.S.C. §207.  *See* Petition (ECF 1), ¶40.

**In sum,** the balance of harms greatly favors a stay.

## II.    THE *EUROPCAR* FACTORS FAVOR A STAY

In interpreting their inherent authority, some courts have considered factors under *Europcar*, 156 F.3d at 317, addressing stays under the New York Convention, even though not applicable here, given the FSIA jurisdictional challenge.  *In CC/Devas*, at \*18, while the Court recognized the New York Convention was not applicable due to the jurisdictional challenge, it found under its inherent authority that "[t]he *Europcar* factors similarly weigh in favor of a stay."

The *Europcar* factors are:

15

(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including … whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity …;

(5) a balance of the possible hardships to each of the parties …; and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

156 F.3d at 317-18.  While not controlling,[14] these factors favor a stay as well.

### A.    The General Objectives of Investor-State Arbitration Favor A Stay

The first *Europcar* factor favors a stay, because a stay advances the objectives of investor-state arbitration and gives deference to post-award procedures of France, Oschadbank's chosen seat of arbitration.

Unlike domestic commercial arbitrations such as in *Europcar*, under Chapter I, §§1-16, of the FAA, investor-state arbitrations under the New York Convention, incorporated as Chapter II, §§201-208, into the FAA, are not designed to be, and are not in practice, expeditious.[15]  The "principal rationale for investor-State dispute mechanisms, is to depoliticize investment disputes

---

[14] *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021), affirmed lifting a stay under the *Europcar* factors because Moldova failed "to address the district court's concerns about further delay." *Id.*, 880.  However, the D.C. Circuit noted it "has yet to endorse the *Europcar* approach" and "doubt[ed] that a six-factor balancing [*Europcar*] test—enforced by appellate review—is consistent with the district court's 'broad discretion to stay proceedings as an incident to its power to control its own docket.'" *Id.*  The RF agrees the traditional factors should govern.

[15] *See, e.g.*, Matthew Hodgson, Yarik Kryvoi and Daniel Hrcka, *2021 Empirical Study: Costs, Damages and Duration in Investor-State Arbitration* 32 (British Inst. of Int'l & Comparative L. & Allen & Overy 2021) ("the mean duration of the proceedings with claimed amounts in excess of US1bn was approximately eight years"), available at: https://www.biicl.org/documents/136_isds-costs-damages-duration.pdf (last accessed on July 20, 2026), **Ex. E.**

16

and permit neutral and binding arbitration between the State and the investor." *Republic of Ecuador v. United States of America*, UNCITRAL, PCA Case No. 2012-5, Award (29 September 2012), ¶201 (quoting the US Statement of Defense).

Investor-state arbitration is usually heard by three-member tribunals and is complicated, protracted, and expensive. *See* Columbia Center on Sustainable Investment, *Primer On Int'l Investment Treaties and Investor-State Dispute Settlement* 6-8 (December 2021), **Ex. D.** "The average ISDS [Investor-State Dispute Settlement] proceeding costs around $13 million for the claimant and respondent combined, including tribunal costs. Complicated and high-stakes cases can cost more." *Id.*, 8. Nothing in the New York Convention suggests that investor-state arbitration is to be expeditious.

In any case, a desire to resolve disputes expeditiously does not override the Award review process pending in France. "The legislative history of [FAA] establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. *We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims.*" *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985).

Oschadbank participated in the preparation of Procedural Order No. 1, setting the seat of arbitration in France, thus agreeing to its post-arbitral review procedures. *See* Award, ¶¶17, 26, 27 (ECF 1-2). Given that Oschadbank agreed to these "arbitration procedures," the Court should favor a stay until the French Proceedings are completed. *See, e.g., Getma I,* 142 F.Supp.3d at 114 (granting stay until completion of set-aside proceedings in the seat of arbitration, because the court "cannot overlook agreed-upon arbitral procedures in favor of the enforcement of an arbitration award"); *CC/Devas*, at *15 ("A stay in this dispute will allow this integral part of the arbitration process to run its course.").

Furthermore, premature enforcement of the Award may result in even longer and more expensive litigation if the Award is set aside in France. *See, e.g., Cube Infrastructure Fund Sicav v. Kingdom of Spain,* 2021 U.S. Dist. LEXIS 256207, at *9 (D.D.C. May 17, 2021) ("If the arbitral award is enforced prematurely and is later annulled, there will undoubtedly be litigation to recover any [foreign] state assets that are seized. … In addition, [if the petitioner] ultimately prevail[s] [it can] be compensated for any delay because the award includes interest.") (citing *Europcar*, 156 F.3d at 317) (granting stay).

### B.    The Status of the French Proceedings Favors A Stay

The second *Europcar* factor favors a stay, because the renewed Revision Proceeding is expected to proceed expeditiously, assuming good faith and lack of hinderance by Oschadbank. The Cassation Court is expected to rule in the 2026 Cassation Court Appeal proceedings within 14 months, *see* Goldberg Affidavit, ¶74, **Ex. A**, and the tribunal took approximately one year to decide the original Revision Action after the stay was lifted, a reasonable estimate for the renewed Action. *See* Chronology, **Addendum A**. *See, e.g., Getma I,* 142 F.Supp.3d at 115-16 (finding second *Europcar* factor favored a stay, because "the Court is not convinced at this juncture that the [post-arbitration review] will take more than two years to resolve the annulment proceeding"); *Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.,* 2005 U.S. Dist. LEXIS 34969, *8-9 (W.D. Pa. Dec. 22, 2005) (staying action under *Europcar* because, *inter alia*, "[t]here is no evidence that the French court will fail to adequately review the arbitral award or partake in excessive delay in doing so").

### C.    The Award Will Receive Equal or Greater Scrutiny In France

The third *Europcar* factor favors a stay, because the tribunal in the reinstated Revision Action will review *ab initio* new factual issues potentially dispositive of this action, including whether the fraud perpetrated by Oschadbank on the tribunal or the newly discovered documents

18

require that the Award be revoked, while the Cassation Court in the 2026 Cassation Court Appeal will review legal issues *de novo*. Second Pinna Dec. ¶¶15, 27. *See, e.g., Getma I,* 142 F.Supp.3d at 116 (this factor favors a stay based on "the possibility that the foreign proceeding at issue here will effectively set aside … the award"); *CC/Devas*, at \*16 (the foreign court's "probing [*de novo*] standard of review supports granting a stay"). *See also Europcar*, 156 F.3d at 317 ("a foreign court well-versed in its own law is better suited to determine the validity of the award").

### D. Characteristics of the French Proceedings Favor a Stay Because The French Proceedings were Commenced in 2019 and Should be Permitted To Conclude

The fourth *Europcar* factor favors a stay based on the characteristics of the French Proceedings, including that the Set-Aside and Revision Actions were commenced in 2019, years **before** Oschadbank belatedly brought this enforcement action. Deciding issues here before the conclusion of the "foreign set aside proceedings would disregard *Europcar's* focus on international comity." *CC/Devas*, at \*8. As emphasized by *Masdar Solar*, "interests of comity … are especially strong where a [foreign] parallel proceeding is ongoing … and there is a possibility that the award will be set aside, since a court **may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings**." 397 F.Supp.3d at 40 (granting stay).

### E. The Balance of Hardships Favors a Stay Because the RF Will Be Harmed and Oschadbank Will Suffer No Harm

The fifth *Europcar* factor favors a stay based on the balance of hardships. "[A]ny rulings in this Court could be undone if the [French] courts ultimately set aside the … [Award]. These potential hardships outweigh [Oschadbank]'s concern that the litigation will be unduly delayed." *CC/Devas,* at \*17. *See also Getma I,* 142 F.Supp.3d at 118 ("premature confirmation and enforcement of the award would essentially eviscerate [the] right to have the arbitral award reviewed by the [courts of the primary jurisdiction]"). In contrast, Oschadbank suffers no harm from a stay, as explained above.

19

**F.**     **All Other Circumstances Favor A Stay**

Finally, the sixth *Europcar* factor favors a stay, because, in general, the "[i]nterests of 'international comity and orderly litigation are best served by imposing a stay' pending final judgment in foreign set-aside proceedings." *CC/Devas*, at *18.   In addition, this case concerns sovereign immunity, which is intended to limit the burden of litigation on foreign sovereigns, significantly supporting a stay.

*Accordingly,* "interests of judicial economy, international comity, and potential hardship to the parties militate toward granting a stay under the Court's inherent powers.  The *Europcar* factors similarly weigh in favor of a stay." *Id.*

## CONCLUSION

For all the foregoing reasons, the Court should stay this case until the conclusion of the French Proceedings.

Dated: July 20, 2026                                      **MARKS & SOKOLOV, LLC**

*/s/ Bruce Marks*
Bruce S. Marks (Bar I.D. CO0034)
Thomas C. Sullivan
Maria Grechishkina
1835 Market St., 17th Floor
Philadelphia, PA 19103
Tel. (215) 569-8901
marks@mslegal.com

20

## <u>LOCAL CIVIL RULE 7(m) CERTIFICATE</u>

Pursuant to Local Civil Rule 7(m) and Section 7(h) of the Court's Standing Order in Civil Cases, RF counsel conferred in good faith with counsel for Oschadbank regarding the relief sought in this Motion.  On July 16, 2026, RF counsel emailed Oschadbank counsel regarding the requested stay.  By July 17 reply email, Oschadbank's counsel opposed the Motion without explanation.  By July 17 email, RF counsel requested the basis for the opposition, given Oschadbank agreed to a stay in the U.K. By July 17 email, Oschadbank's counsel responded, claiming the UK proceedings are distinguishable. By July 17 email, RF counsel inquired whether counsel agreed the exchanges satisfied the Court's meet-and-confer requirements, and by July 17 email, Oschadbank's counsel confirmed that they did and invited the RF to "make your motion."

Dated: July 20, 2026

**MARKS & SOKOLOV, LLC**

/s/ Bruce Marks
Bruce S. Marks (Bar I.D. CO0034)
Thomas C. Sullivan
Maria Grechishkina
1835 Market St., 17th Floor
Philadelphia, PA 19103
Tel. (215) 569-8901
marks@mslegal.com

21

## ADDENDUM A

## CHRONOLOGY OF THE REVISION ACTION

### PLEADINGS BEFORE THE TRIBUNAL

| | | |
|---|---|---|
| 1. | August 19, 2019 | RF Revision Application |
| 2. | September 25, 2019 | Oschadbank Response in Revision Action |
| 3. | October 25, 2019 | RF Reply in Revision Action |
| 4. | November 25, 2019 | Oschadbank Rejoinder in Revision Action |

### TRIBUNAL'S SUA SPONTE STAY OF REVISION ACTION AND SUBSEQUENT DISMISSAL

| | | |
|---|---|---|
| 5. | December 23, 2019 | Tribunal Sua Sponte Stayed Revision Proceeding |
| **6.** | **December 7, 2022** | **Cassation Court Judgment** |
| 7. | December 22, 2022 | Oschadbank Letter to Tribunal RE: Cassation Court Judgment |
| 8. | December 11, 2023 | Revision Decision – RF Revision Application dismissed |
| 9. | May 16, 2024 | RF Letter to Tribunal claiming lack of impartiality by Brower based on Amicus Brief in *Hulley* |
| 10. | May 27, 2024 | Brower's email to the RF denying lack of impartiality |
| 11. | June 19, 2024 | Award on Costs awarding $492,671.23 to Oschadbank |

### PARIS COURT OF APPEAL PROCEEDINGS

| | | |
|---|---|---|
| 12. | March 8, 2024 | RF "seized" COA in Revision Set-Aside Action |
| 13. | August 6, 2024 | RF First Brief filed |
| 14. | December 11, 2025 | Oschadbank Last Brief filed |
| 15. | February 10, 2026 | Hearing in Revision Set-Aside Action |
| 16. | June 23, 2026 | COA Revision Decision – Set-Aside of the Revision Decision and Award of €150,000 in costs to the RF |
| 17. | June 23, 2026 | COA Costs Set-Aside Decision – Set-Aside of June 19, 2024 Award on Costs in favor of Oschadbank, and ordering Oschadbank to pay €50,000 in costs to the RF |

### CIRCUMSTANCES OF THE *HULLEY* AMICUS BRIEF

| | | |
|---|---|---|
| 18. | May 8, 2024 | Motion for Leave to File Amicus Brief in *Hulley* |
| 19. | May 20, 2024 | Opposition to Amicus Brief Based on Brower Conflict |
| 20. | May 23, 2024 | Amicus Reply, denying partiality |

22

## CERTIFICATE OF SERVICE

I certify that on July 20, 2026  the foregoing document was filed electronically and served upon all counsel of record via the Court's CM/ECF filing system in accordance with the Federal Rules of Civil Procedure.

Dated: July 20, 2026                                    **MARKS & SOKOLOV, LLC**

                                                        */s/ Bruce Marks*
                                                        Bruce S. Marks (Bar I.D. CO0034)
                                                        Thomas C. Sullivan
                                                        Maria Grechishkina
                                                        1835 Market St., 17th Floor
                                                        Philadelphia, PA 19103
                                                        Tel. (215) 569-8901
                                                        marks@mslegal.com

23